NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

RICHARD CURRIE,

Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

---

Civil Action No. 10-5757

OPINION

**CECCHI, District Judge.**

Richard Currie ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff disability benefits under the Social Security Act ("Act"). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g). This motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of Administrative Law Judge Kenneth Chu ("ALJ") is affirmed.

### I. PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") with the Social Security Administration ("SSA") on July 2, 2007, alleging disability beginning on April 6, 2006. (R. 101-104.) The claim was initially denied on January 9, 2008. (R. 49-53.) Thereafter, Plaintiff filed for reconsideration on March 10, 2008, and was again denied benefits on August 8, 2008. (R. 56-57, 58-60.) Plaintiff then filed a written request for a hearing on August 22, 2008. (R. 61.) On November 20, 2009, Plaintiff appeared and testified at a hearing before the ALJ. (R. 20-46,

77-99.) Based on Plaintiff's residual functional capacity and past relevant work, the ALJ concluded on January 12, 2010 that Plaintiff is not disabled under §1614(a)(3)(A) of the Act and that Plaintiff is therefore not entitled to disability benefits. (R. 9-16.) Following the ALJ's decision, Plaintiff filed for reconsideration by the Appeals Council on February 19, 2010. (R. 4-5.) Plaintiff's request for reconsideration was denied on September 22, 2010. (R. 1-3.) The Appeals Council's denial to rehear the matter made the ALJ's disposition of the matter the final decision of the Commissioner. (*Id.*)

Plaintiff initiated the current action against the Social Security Administration in this Court on November 4, 2010 seeking a determination that he is disabled and therefore entitled to SSI benefits. (*See* Complaint.)

## II.   FACTUAL BACKGROUND

### A.   Personal and Employment History

At the time of the hearing, Plaintiff was fifty-nine years old and lived with his mother and sister in a house that his sister owns. (R. 24; 28-29.) Plaintiff was born in Argentina, where he attended twelve years of schooling and graduated from high school. (R. 24.) Plaintiff moved to the United States in approximately 1981 and is now a citizen of this country. (*Id.*) Plaintiff testified that he held jobs as a painter, handy man, truck driver, and loading dock worker through 1991. (R. 117-20.) Plaintiff's most recent work was for a vending machine company from 1991 until 1999. (R. 117.) At this job, Plaintiff loaded trucks, drove a truck, made deliveries, and supervised up to three people. (R. 120.) Plaintiff regularly lifted fifty pounds or more and, at times, lifted 100 pounds or more. (*Id.*)

**B.     Daily Activities**

Plaintiff testified, and also supplied information in his "Function Report," as to what he does on a typical day. (R. 25-26, 117-131.) He testified that he wakes up at 8:00 a.m. and eats a breakfast prepared for him by his mother. (R. 39-40.) Plaintiff testified that he no longer interacts with friends or spends more than a few minutes outdoors. (R. 41.) Plaintiff's family has a dog that he sometimes feeds and takes outside for short periods of time. (R. 42.) Plaintiff does not do any chores around his house because he claims he just does not want to do them anymore. (R. 44.) Plaintiff claimed that there are days that he cannot even get out of bed. (R. 125.) Plaintiff claims difficulties in taking care of his personal hygiene on a daily basis, including grooming, bathing, taking his prescribed medications, and using the bathroom. (R. 126.) He claims his mother and sister aid him in these tasks. (R. 126-27.)

Plaintiff further testified that he has tried to work since his last job in 1999, but claims that he would be hired provisionally and then not be asked to work after a week. (R. 42.) Plaintiff testified that he does not drive anymore because he gets lost, scared, and dizzy. (R. 43, 128.) He also feels that he is a danger to others when he is driving. (R. 43.) Plaintiff does not handle his own finances because he claims he cannot concentrate anymore. (R. 128.)

**C.     Medical History**

Plaintiff's medical history provided to the ALJ dates back to February 6, 1992. (R. 411.) It appears the Plaintiff's physician at that time was Dr. Jose Gomez. (R. 411-413.) At an office visit on February 6, 1992, Plaintiff complained of bleeding and generalized weakness. (R. 411.) Dr. Gomez prescribed a number of medications for Plaintiff. (*Id.*) Dr. Gomez also ordered a radiographic (x-ray) examination of Plaintiff's chest, to take place the following day, which

revealed Plaintiff's chest to be "normal." (R. 413.) Plaintiff's blood test demonstrated he had high cholesterol. (R. 412-415.)

Plaintiff had many tests run between March and July of 1992, and continued to complain of abdominal pain. (R. 401-12.) The imaging tests revealed multiple calcifications in various locations in the abdomen, a complex legion on Plaintiff's liver, and a potential hemangioma on the liver. (R. 405-12.) Plaintiff had no definite evidence of an ulcer niche, but mild gastro-esophageal reflux disease (GERD) was found. (R. 401.) After these tests, on July 27, 1999, Dr. Gomez reported that Plaintiff had peptic ulcer disease and severe anemia due to chronic blood loss. (R. 416.) Dr. Gomez stated in his disability report to the State that Plaintiff would be unable to work from July 19, 1999 until September 20, 1999. (*Id.*)

A gastrointestinal series was performed on Plaintiff on September 13, 1999, which revealed a normal esophagus, a normal gastric fundus, body and antrum, and no hiatus hernia. (R. 394.) The exam revealed moderate inflammatory changes of the duodenal bulb with edema of the mucosal folds, but no evidence of an actual ulcer niche. (*Id.*) Dr. Gomez continued to treat Plaintiff and, in a note dated March 13, 2001, stated that Plaintiff was being followed due to hypertension, hypercholesterolemia, and peptic ulcer disease. (R. 417.) At that time, Plaintiff was taking Accuretic, Plendil, Prevacid, and Zocor. (*Id.*)

Plaintiff continued to undergo medical testing sporadically from 2002 to 2006. (R. 206-208, 312-316, 358-60, 366.) Dr. Gomez filed "Confidential Medical Examining Physician's Reports" on Plaintiff's behalf with the State of New Jersey every year from 2002 to 2007, which stated that plaintiff suffered from several ailments and that, though he was ambulatory, he was unable to work. (R. 262-64, 293-95, 297-98, 332-34, 329-31, 340-41, 418-21.)

4

An ultrasound from February 27, 2006 indicated that patient was suffering from renal neoplasm, a cancer of the kidney. (R. 204, 303.) This test correlated with the finding of the CR scan performed on January 30, 3006, that primary renal neoplasm was the leading differential for Plaintiff's renal mass. (*Id.*) On April 4, 2006, Dr. Gomez examined Plaintiff in anticipation of surgery. (R. 260, 291.) Dr. Gomez's impression of Plaintiff was that he had a left renal mass, hypertension, hypercholesterolemia, peptic ulcer disease, and diverticulitis. (*Id.*) Based on this examination, Dr. Gomez cleared Plaintiff for surgery. (*Id.*) On April 6, 2006, Dr. Sean Eagan performed a left laparoscopic nephrectomy on Plaintiff to remove a cancerous mass. (R. 279-86, 304-11.)

Post-operative tests revealed hepatic lesions, which Dr. Egan planned to investigate through further testing. (R. 277.) Plaintiff underwent a hepatic ultrasound and a tagged red blood cell study in an attempt to ascertain the character of the lesions. (R. 189-91, 236.) Ultimately, in order to rule out liver cancer, Dr. Egan ordered a biopsy, which was performed by Dr. Kaplan in an outpatient procedure on January 16, 2007. (R. 216-30, 234-35.) The biopsy showed no significant pathological changes and no malignancy was identified in the tissue samples. (R. 227, 235.)

In a report dated July 11, 2007, Dr. Egan stated that Plaintiff was without any evidence of recurrence. (R. 231.) Dr. Egan also stated that Plaintiff was able to work and had no limitations relative to standing, walking, sitting, pushing, pulling, and that he was otherwise not limited in any way. (R. 232.) Specifically, he noted that Plaintiff had no other conditions that limited his ability to do work related activities. (*Id.*)

On October 25, 2007, Dr. Egan reported that Plaintiff was doing well at a follow-up visit. (R. 271.) Dr. Egan stated that Plaintiff claimed disability, but could not see that being warranted

from a urological standpoint. (*Id.*) Plaintiff had no weight loss, no bone pain, and no pulmonary type symptoms. (*Id.*) Further, the hepatic lesions that were present on previous pre- and post-operative exams had been fully evaluated. (*Id.*) Dr. Egan did note mild COPD present on a chest x-ray but no mass lesions or infiltrates were noted in the lungs. (*Id.*) Finally, a blood test revealed mild renal insufficiency, but these levels were unchanged from previous evaluations. (*Id.*) Dr. Egan's recommendations were to have a nephrology evaluation, chest x-ray and blood tests in six months, a CT scan in one year, and otherwise to engage in "conservative management." (*Id.*)

The State of New Jersey referred Plaintiff to Dr. John M. Augustin for a physical examination when Plaintiff continued to seek disability services. (R. 242-47.) Dr. Augustin's December 15, 2007 physical examination of Plaintiff disclosed a middle-aged male in no apparent acute distress weighing 203 pounds and standing 5 feet 9 inches tall. (R. 243.) Plaintiff's blood pressure was 130/80 and his respiration was 20. (*Id.*) Plaintiff's uncorrected and corrected vision was 20/30 in the left eye and 20/40 in the right eye. (*Id.*) Plaintiff's tests revealed no physical abnormalities, however Plaintiff's comprehensive metabolic panel disclosed a blood glucose of 431 and a serum creatinine of 1.7, both of which were above the normal range. (R. 243, 245.) Plaintiff also had a mean corpuscular volume (MCV) of 74 and a mean corpuscular hemoglobin (MCH) of 23.6, both of which were lower than the normal range. (R. 243, 246.) In summary, Dr. Augustin noted that Plaintiff had a history of left nephrectomy for carcinoma of the kidney and a mass in the liver. (R. 243-44.) Finally, the doctor noted that Plaintiff suffered from hypertension and gastritis. (R. 244.)

Dr. Gomez, in a letter dated January 25, 2008, stated that he was following Plaintiff for hypertension, hypercholesterolemia, peptic ulcer disease, and observing Plaintiff's status post

left nephrectomy secondary to malignancy. (R. 265.) Dr. Gomez also stated that Plaintiff had elevated prostate-specific antigen (PSA) levels during his last evaluation and was referred to a urologist for further investigation. (*Id.*)

Plaintiff was evaluated on November 12, 2009 by Dr. Eduardo Samaniego. (R. 431-33.) Dr. Samaniego noted that Plaintiff's physical examination was required in order to qualify for disability insurance. (R. 431.) Plaintiff told Dr. Samaniego that since 2002 he had suffered from back pain, neck pain, bilateral joint pain, hypertension, anxiety, and depression. (*Id.*) Dr. Samaniego noted that Plaintiff said he was seeing a psychiatrist and taking Depakote and amitriptyline to relieve the anxiety and depression symptoms. (*Id.*) Plaintiff complained of fatigue, headaches, knee pain that prevented sitting and standing for more than fifteen minutes at a time, and occasional muscle pain and weakness. (*Id.*) Finally, Plaintiff told Dr. Samaniego that he sometimes uses a walker for stability and complained of having some inability to concentrate. (*Id.*)

Dr. Samaniego conducted a physical examination on November 12, 2009 and assessed that Plaintiff had hypertension, GERD, and hypercholesterolemia. (R. 432.) Dr. Samaniego noted that Plaintiff was a well-developed, well-nourished patient in no acute distress. (*Id.*) Plaintiff had no seizures or paralysis. (*Id.*) Dr. Samaniego noted that Plaintiff complained of back pain when his back was palpitated and flexed. (*Id.*) Plaintiff performed straight leg raises to twenty degrees with both legs and some crepitation was present in both knees. (*Id.*) Dr. Samaniego noted that Plaintiff looked generally anxious. (*Id.*)

Plaintiff had another examination by Dr. Samaniego the following day. (R. 429-30.) Dr. Samaniego reported similar findings. (R. 429-30, 431-33.) Dr. Samaniego noted a new rash and reported that Plaintiff was only able to recall one object out of three mentioned. (R. 430.) Dr.

7

Samaniego noted that Plaintiff's range of motion and muscle power were grossly intact. (*Id.*) Finally, Dr. Samaniego stated that Plaintiff was very nervous and confused about his medications. (*Id.*)

Plaintiff stated at his oral hearing on November 20, 2009, that he had seen a psychiatrist "one or two times" but there is no record of these visits in the record despite the ALJ affording Plaintiff twenty-one days after the hearing in which to submit any documents regarding medical history. (R. 27-28; 38.) Plaintiff's counsel did submit additional documents within this time frame, but these consisted only of reports by Dr. Samaniego. (R. 427.)

### III.   LEGAL STANDARD

#### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" and must give deference to the administrative findings. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *See Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (footnote and internal quotes omitted). Substantial evidence is "'more than a mere scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 U.S.

Dist. LEXIS 32110, at *7 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620, 131 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 Fed. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)). Furthermore, where the opinion from a treating physician is rejected in favor of the opinion of a non-treating physician, the ALJ must adequately explain his reasons and provide the rationale behind his decision. *See Brewster v. Heckler,* 786 F.2d 581, 585 (3d Cir. 1986). Given the totality of the evidence, including objective medical facts, diagnoses, medical opinions, and subjective evidence of pain, the reviewing court must determine whether the Commissioner's decision is adequately supported. *See Curtain v. Harris*, 508 F. Supp. 791, 793 (D.N.J. 1981). Generally, medical opinions consistent with other evidence are given more weight whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. § 416.927. Overall, the substantial evidence standard is a deferential standard of review that requires deference to inferences drawn by the ALJ from the facts if they are supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

**B.    Determining Disability**

Pursuant to the Social Security Act, to receive Supplemental Security Income Benefits, a plaintiff must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

9

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the plaintiff's physical or mental impairments must be "of such a severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. Impairments that affect the plaintiff's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations. 20 C.F.R. § 404.1569a; *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). All other impairments are considered nonexertional. *See Sykes*, 228 F.3d at 263. Decisions regarding disability will be made individually and will be based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C).

The SSA follows a five-step sequential evaluation to determine whether a plaintiff is disabled. 20 C.F.R. § 416.920. The evaluation will continue through each step unless it can be determined at any point that the plaintiff is, or is not, disabled. 20 C.F.R. § 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the

Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263, n.2.

At step one, the plaintiff's work activity is assessed, and the plaintiff must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit. 20 C.F.R. §416.927. If the plaintiff is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of plaintiff's medical condition, age, education, or work experience. 20 C.F.R. § 416.920(b). If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step. At step two, the plaintiff must show he has a medically determinable "severe" impairment or a combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii). An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010).

If the plaintiff does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the plaintiff has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the plaintiff's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the impairments are the same or equivalent to those listed, the plaintiff is per se disabled. 20 C.F.R. § 416.920(d); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d

11

112, 119 (3d Cir. 2000). At this point, the ALJ must set forth the reasons for his findings. *Burnett*, 220 F.3d at 119. The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence. *Id.* Simple conclusory remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review." *Id.*

When the plaintiff does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four. At step four, the ALJ must determine whether the plaintiff's residual functional capacity enables him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). This step involves three sub-steps: (1) the ALJ must make specific findings of fact as to the plaintiff's residual functional capacity (RFC); (2) the ALJ must make findings of the physical and mental demands of the plaintiff's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether the plaintiff has the capability to perform the past relevant work. *Burnett*, 220 F.3d at 120. The SSA classifies residual functional capacity and past work by physical exertion requirements from "sedentary" to "very heavy work." *See id.;* 20 C.F.R. § 404.1567. If the plaintiff can perform his past work, the ALJ will find that he is not disabled. 20 C.F.R. § 416.920(f). If the plaintiff lacks the residual functional capacity to perform any work he has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Commissioner must show that, based on the plaintiff's residual functional capacity and other vocational factors, there is a significant amount of other work in the national economy that the plaintiff can perform. 20 C.F.R. § 416.920(a)(4)(v). During this final step, the burden lies with the government to show that the plaintiff is not disabled by demonstrating that there is other substantial, gainful work that the plaintiff could perform, given his age, education, work experience and residual functional capacity. *See Rutherford v.*

*Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *Sykes*, 228 F.3d at 263. If the Commissioner cannot show there are other jobs for the plaintiff in the national economy, then the plaintiff is disabled. 20 C.F.R. § 416.920(a)(4)(iv).

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

After reviewing all of the evidence in the record, the ALJ determined that Plaintiff was not disabled and denied his claim for SSI benefits. (R. 9-16.) The ALJ arrived at his decision by following the required five-step sequential analysis. *See* 20 C.F.R. § 416.920.

At step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity since June 13, 2007, the date of Plaintiff's original application for SSI benefits. (R. 11.) At step two, the ALJ concluded that Plaintiff had the following severe impairments based on a review of the medical evidence in the record: arterial hypertension, depression, migraines, hyperlipidemia, chronic renal failure, and kidney and liver problems. (*Id.*)

Accordingly, the ALJ proceeded to step three, where he evaluated the listings in section 12.04, paragraphs "B" and "C." (*Id.*) The ALJ found that plaintiff's mental impairments did not meet or medically equal the criteria of the above stated listings. (*Id.*) To satisfy paragraph "B," the mental impairment must result in at least two of the following: marked restriction of activities in daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*Id.*) Based on this standard, the ALJ found that Plaintiff had mild restrictions of activities of daily living and mild difficulties in maintaining social functioning. (*Id.*) In regard to concentration, persistence, or pace, the ALJ found that Plaintiff had moderate difficulties. (*Id.*) Further, the ALJ found that Plaintiff "has experienced

13

no episodes of decompensation, which have been of extended duration." (*Id.*) Although Plaintiff claims no independent activities of daily living and socialization, the ALJ found these claims to be inconsistent with the medical evidence provided. (R. 11-12.) Based on these factors, the ALJ found that neither the requisite "marked" limitations or repeated episodes of decompensation of extended duration were present. (R. 12.) Therefore, the criteria under paragraph "B" were not satisfied. (*Id.*)

The ALJ also considered if, under paragraph "C," Plaintiff satisfied the necessary criteria to be classified as having a "listed impairment." (*Id.*) The ALJ found that the evidence failed to establish the presence of the paragraph "C" criteria. (*Id.*) In conclusion, the ALJ determined that since the alleged onset date of disability, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404. (*Id.*)

The ALJ then proceeded to step four, where he found that Plaintiff had the residual functional capacity to perform the full range of medium work, the type of work his prior occupation was defined as, according to 20 C.F.R. § 416.967(c). (*Id.*) The ALJ found, after careful consideration of all medical and opinion evidence submitted, that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment. (R. 15.)

Finally, the ALJ found, based on Plaintiff's residual functional capacity, that Plaintiff is capable of performing past relevant work as a commercial driver because this work does not require the performance of activities precluded by his medical conditions. (R. 16.) Therefore,

based on the required five-step sequential analysis, the ALJ found that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act and is not eligible for SSI benefits. (*Id.*)

**B.     Analysis**

Plaintiff raises three primary arguments on appeal. Plaintiff first alleges that the ALJ improperly overlooked both the opinion of Dr. Gomez and his own statements regarding his condition. Second, he contends that the ALJ improperly found that he was not disabled. Finally, Plaintiff argues that the ALJ improperly found that he could perform his past work. The Court will address each of these arguments in turn.

### 1.     The ALJ Properly Assessed the Submitted Medical Evidence and the Plaintiff's Symptoms.

Plaintiff's first claim is that the ALJ "overlooked" his symptoms, particularly his mental health issues, his disorientation, and his seizures. (Pls. Br. 3.) Further, Plaintiff claims that the ALJ did not correctly review his medical records and "never paid attention at [sic] the medical reports of Dr. Gomez." (*Id.* at 2-3.) Contrary to this claim, the ALJ completed a thorough review of Plaintiff's medical history and concluded that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. The Court finds that the ALJ's determination was supported by the medical evidence, including the diagnostic and clinical findings of Plaintiff's treating physicians.

In determining the Plaintiff's residual functional capacity, an ALJ must review the plaintiff's medical and opinion evidence in an effort to determine if the plaintiff's condition will allow him to perform his past relevant work. 20 C.F.R. § 416.920 (e)-(f). In making this finding, the ALJ must consider all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence based on the requirements of 20 C.F.R. § 416.929 and Social Security Rulings ("SSRs") 96-4p and 96-7p.

Further, the ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (R 12.)

Pursuant to 20 C.F.R. § 416.929, the ALJ must follow a two-step process when considering a claimant's symptoms. First, the ALJ must find whether there is an underlying medically determinable physical or mental impairment, that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and that could reasonably be shown to cause claimant's symptoms. If the ALJ finds that such impairment is present, he must next evaluate the intensity, persistence, and limiting effects of the symptoms and determine to what extent the symptoms limit the claimant's ability to work. 20 C.F.R. § 416.929(b)-(c); SSR 96-7p, 1996 WL 374186 (July 2, 1996). In this second analysis, the ALJ will consider the objective medical evidence as well as other evidence, and will give serious consideration to the claimant's statements about his symptoms. *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986); 20 C.F.R. § 416.929(c)(4). Since "allegations of pain and other subjective symptoms must be supported by medical evidence," *Hartranft*, 181 F.3d at 372, the ALJ should weigh a claimant's symptoms against the objective evidence.

In this matter, the ALJ complied with these requirements by conducting a thorough analysis of all submitted evidence. (R. 9-16.) The ALJ provided a detailed accounting of all the submitted examinations, reports, and statements by Plaintiff. (*Id.*) The ALJ formed his opinion based on Plaintiff's medical conditions and his ability to work based on the opinions of Doctors Gomez, Egan, Samaniego, and Hoursri. (R. 12- 16.) Based on his review, the ALJ determined that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (R. 15.)

16

To support his conclusion, the ALJ cited specifically to the July 2007 exam by Plaintiff's treating physician, Dr. Egan, stating that Plaintiff has "no limitations in lifting, standing, walking, sitting, pushing or pulling." (R. 15.) The ALJ also cited to Dr. Samaniego's November 2009 examination, stating that Plaintiff looked nervous, but the examination was normal. (*Id.*) The ALJ's conclusion was also supported by Dr. Housri, who examined Plaintiff in January 2008. (*Id.*) Dr. Housri reported that Plaintiff could "lift and/or carry fifty pounds occasionally and twenty-five pounds frequently." (*Id.*) Dr. Housri also found that Plaintiff could "stand and/or walk about six hours and sit about six hours in an eight-hour day." (*Id.*) Additionally, Dr. Housri stated that Plaintiff's ability to "push and/or pull was unlimited . . . [and] he could occasionally climb ladders, ropes, and scaffolds." (*Id.*)

In addition to the physical impairments, Plaintiff also claimed that it is difficult for him to concentrate and he is anxious around people. (R. 14.) Additionally, he stated that he was treated by Dr. Gomez once or twice for his psychiatric condition, but could not continue treatment due to lack of funds. (*Id.*) Plaintiff was granted twenty-one days after his hearing to submit medical documentation of his psychiatric condition. (*Id.*) Plaintiff failed to submit any additional evidence on these claims. (*Id.*)

Plaintiff further claims in his brief that he suffers from seizures. (Pls. Br. 3.) However, a review of the record does not indicate any findings that Plaintiff suffered from seizures or used medication to control seizures. In addition, Dr. Augustin's neurological examination produced normal results. (R. 243.) Plaintiff's cranial nerves and deep tendon reflexes were found to be normal. (*Id.*) While Plaintiff complained that he has musculoskeletal pain, Dr. Samaniego found that Plaintiff's cranial nerves were intact and he did not note any gross focal motor or sensory deficits. (R. 432.)

Plaintiff also points to Dr. Gomez's and Dr. Samaniego's conclusions that the claimant cannot work as evidence that the ALJ ignored his medical records. (Pls. Br. 2.) The ALJ is tasked with reviewing all the medical evidence submitted, but medical opinions consistent with other evidence are given more weight whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. § 416.927. Although Dr. Gomez did report in May 2007 that Plaintiff had limitations in climbing, stooping, bending and lifting, and that he could not work full time, this opinion is inconsistent with the majority of the other evidence in the record showing that Plaintiff's symptoms and conditions were not severe enough to cause him to be unable to perform his past relevant work. (R. 15.) Furthermore, the ALJ is not required to give special consideration to statements that Plaintiff is unable to work, as this is a conclusion reserved solely for the Commissioner. 20 C.F.R. 416.927(e)(3). Thus, the ALJ properly afforded these conclusions "little weight" because they are not supported by objective clinical findings and are inconsistent with other substantial evidence. (R. 16.) Accordingly, the Court finds that the ALJ properly analyzed Plaintiff's subjective complaints and medical records and concludes that the ALJ's findings are supported by substantial evidence in the record.

### 2. Plaintiff is Not Permanently Disabled as Defined by The Act.

Disability under the Act is determined by Section 1614(a)(3)(a). It is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c(3) (LexisNexis 2012). The SSA has established the five-step sequential process for an ALJ to utilize in determining whether an individual is disabled. 20

C.F.R § 416.920(a). Plaintiff argues that the ALJ improperly found that he was not disabled. Plaintiff erroneously relies on New Jersey Administrative Code § 10:90-2.4(a)(3), which governs "permanent disability" under the Work First New Jersey Program, which is a state provision that "require[s] all able-bodied families with dependent children, single adults and couples without dependent children to WORK rather than receive welfare." N.J.A.C. § 10:90-1.1(a). However, that statute is inapplicable to this proceeding.

Contrary to Plaintiff's argument, the standard defined in the Code of Federal Regulations is the appropriate means for determining permanent disability under the Act. If the plaintiff can perform his past work, the ALJ must find that he is not disabled. 20 C.F.R. § 416.920(f). As discussed *supra* IV.B.1, the ALJ, as evidenced by his opinion thoroughly reviewed the evidence before him. The ALJ followed the proper procedural formalities and applied the appropriate legal standards, determining that Plaintiff is not disabled as he is capable of performing his past relevant work as a commercial driver. A review of the evidence in this matter demonstrates that there is substantial evidence for the findings of the ALJ, that these findings were properly explained and supported in his opinion, and that the denial of SSI benefits was therefore proper.

### 3. The ALJ Properly Found that Plaintiff Can Perform His Past Relevant Work.

Plaintiff asserts that the ALJ wrongly found that Plaintiff could perform his past work as a driver for a vending machine company. (Pls. Br. 3.) In making his determination, the ALJ compared Plaintiff's residual functional capacity with the requirements of his past work. (R. 16.) Plaintiff testified that his past job involved driving a truck, making deliveries, and repairing vending machines. (R. 25.) Pursuant to the U.S. Department of Labor, Dictionary of Occupational Titles (4th Ed. Revised 1991) § 639.281-014, this job is defined as "medium work." See §292.483-010 (vending machine coin collector is medium work); § 319.464-014

(vending machine attendant is light work); § 292.353-010 (sales route driver is medium work). Because Plaintiff's residual functional capacity allows Plaintiff to perform at a level for medium work, the ALJ properly concluded that Plaintiff could perform his past relevant work, as it is generally performed in the national economy. (R. 16.)

Plaintiff has indicated that his former job required that he lift 50 to 100 pounds, which is beyond the level required for medium work. However, the Act states that an individual can perform past relevant work if he can perform the demands and duties of the job as he actually performed it previously or if he can perform the job as "ordinarily required by employers throughout the national economy." SSR 82-61. Plaintiff's past job, as it is generally performed in the national economy, does not require the amount of lifting that Plaintiff actually performed. Therefore, based on Plaintiff's residual functional capacity, the ALJ properly found that Plaintiff could perform his past work.

## V. CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed. An appropriate Order accompanies this Opinion.

Dated: June 18, 2012

HON. CLAIRE C. CECCHI
United States District Judge